KIRBY, Judge.
 

 | plaintiff, William Strickland, filed suit for wrongful eviction and damages against his former landlord, defendant, Lenore Gordon, alleging that she discarded his personal property after Hurricane Katrina without his permission.
 
 [1]
 
 He seeks damages for the loss of certain valuables, including an Elkhart Conn 8D French Horn and a Lawson Bell. Following a trial, the trial court rendered a judgment in favor of Ms. Gordon. Mr. Strickland appealed. For the reasons that follow, we affirm the judgment.
 

 In August 2005, Mr. Strickland, head librarian at the Tulane University A.B. Freeman School of Business and a professional musician, was renting a ground level apartment at 4923 South Miro Street in New Orleans from Ms. Gordon. The rental agreement was a verbal, month-to-month lease. On August 28, 2005, Mr. Strickland and his children, who were living with him at the time, left the apartment and drove to Shreveport, as the may- or had issued a mandatory evacuation of the city due to Hurricane Katrina. The next morning Hurricane |2Katrina made landfall just south of New Orleans. The accompanying high winds and tidal surges caused levee breaches at the 17th Street, London Avenue and Industrial Canals, resulting in widespread flooding throughout the city. The interior of Mr. Strickland’s apartment sustained several feet of water.
 

 While evacuated, Mr. Strickland tried repeatedly to reach Ms. Gordon by telephone but was unsuccessful. At the same time, Ms. Gordon, who was temporarily residing in Baton Rouge, had asked Carey Herman, a Loyola University employee with access to a computer and Mr. Strickland’s neighbor, to search the Tulane University website to try to locate Mr. Strickland. Twice, Ms. Herman tried to locate Mr. Strickland through the website but was unsuccessful. In late September 2005, when the mandatory evacuation order was lifted for parts of the city, Ms. Gordon returned and hired a cleaning crew to clean, gut and remove the debris from her rental properties, including Mr. Strick
 
 *370
 
 land’s apartment. Mr. Strickland returned to New Orleans in early October 2005, and discovered his apartment had been cleaned and most of his personal property discarded onto the street outside the premises. Although several items were salvageable, some were missing, including his customized French horn.
 

 Prior to trial the parties made the following stipulations: 1) Mr. Strickland had a month-to-month lease with Ms. Gordon; 2) the apartment was flooded during Hurricane Katrina; 3) the apartment was destroyed and rendered uninhabitable due to the flood; 4) the city remained flooded for weeks after the storm; 5) Ms. Gordon did not institute an eviction proceeding against Mr. Strickland; 6) Ms. Gordon and | sMr. Strickland were unable to contact each other for several weeks after the storm; 7) due to the flooding, Ms. Gordon removed Mr. Strickland’s property from the apartment after the storm without his permission; 8) Executive Order KBB 05-67, prohibiting evictions after the storm until October 25, 2005, was in effect when Ms. Gordon had Mr. Strickland’s property removed from the apartment.
 

 After Mr. Strickland presented his case at trial, Ms. Gordon moved for an involuntary dismissal of the wrongful eviction claim pursuant to La. C.C.P. art. 1672 B
 
 [2]
 
 . The trial court granted the motion. Following the trial, the court took the damages claim under advisement and, on April 9, 2009, rendered judgment in favor of Ms. Gordon. In written reasons for judgment, the trial court stated the following:
 

 The court finds that Ms. Gordon made numerous attempts after the storm to contact Mr. Strickland through the Tulane University database web-site, before she disgarded [sic] his damaged property. The court finds that Ms. Gordon acted reasonable [sic] in light of the circumstances and finds in favor of the defendant.
 

 Mr. Strickland raised three assignments of error on appeal. First, he argues that the trial court erred in dismissing his wrongful eviction claim because Executive Order KBB 05-67 was in effect when Ms. Gordon had his personal property removed from the apartment.
 

 14Louisiana Civil Code article 2668 provides, in part, “Lease is a synallagmatic contract by which one party, the lessor, binds himself to give to the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay.”
 

 The lessor’s principal obligations are set forth in La. Civ.Code art. 2682, which states, “The lessor is bound: (1) To deliver the thing to the lessee; (2) To maintain the thing in a condition suitable for the purpose of which it was leased; and (3) To protect the lessee’s peaceful possession for the duration of the lease.”
 

 The lessee’s principal obligations are set forth in La. Civ.Code art. 2683, which states, “The lessee is bound: (1) To pay the rent in accordance with the agreed terms; (2) To use the thing as a prudent administrator and in accordance with the purpose for which it was leased; and (3) To return the thing at the end of the lease
 
 *371
 
 in a condition that is the same as it was when the thing was delivered to him, except for normal wear and tear or as otherwise provided hereafter.” If a lessee fails to pay the rent in the amount and manner agreed upon, a lessor may dissolve the lease and regain possession in the manner provided by law. See La. Civ.Code art. 2704.
 

 The evidence in the record indicates that the extensive water damage to the interior of the apartment rendered it uninhabitable and unsuitable for a residential lease. Because Ms. Gordon was without fault in causing the damage, and Mr. Strickland never paid rent after the month of August, we agree with the trial court’s conclusion that a wrongful eviction did not occur in this case. Thus, we find the 1¡¡trial court properly granted the involuntary dismissal of Mr. Strickland’s wrongful eviction claim.
 

 In the second assignment of error, Mr. Strickland contends that the trial court erred by finding Ms. Gordon acted reasonably in discarding his personal property because she had made a good faith attempt to locate him after the storm. We find no merit to this argument.
 

 Ms. Gordon testified that she had no contact information on Mr. Strickland other than his New Orleans home and work telephone numbers, which were out-of-service due to the storm. Mr. Strickland acknowledged that he had no cell phone at that time. Ms. Gordon contacted Ms. Herman and asked her to try to locate and/or e-mail Mr. Strickland through Tulane University’s website to let him know that she could be reached in Baton Rouge. Ms. Herman corroborated Ms. Gordon’s testimony, explaining that she tried on two separate occasions to contact Mr. Strickland but was unsuccessful.
 

 Ms. Gordon testified that she hired a crew to clean her own home and six rental properties based on information given by FEMA, Red Cross, and local authorities warning residents that flooded properties contained toxic mold and raw sewerage, which posed serious health and safety hazards. Before commencing the cleanup, she contacted all of her tenants, save Mr. Strickland. Several tenants instructed her to discard their damaged property. Ms. Gordon also testified that she left a note on the door of Mr. Strickland’s apartment with her contact information in the event he returned to the city.
 

 I (¡Mr. Strickland testified that after the storm the apartment was uninhabitable. Although he claimed that upon his return he found most of his personal property outside on the street, he admitted that a few items that were not damaged because they were above the water level were in the apartment. Also, Ms. Herman testified that Ms. Gordon had asked her and her husband to keep Mr. Strickland’s bicycle in their garage until he returned.
 

 The appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a trial court’s finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety.
 
 Driscoll v. Stucker,
 
 2004-0589, p. 17 (La.1/19/05), 893 So.2d 32, 46. Considering the evidence in the record, we cannot say the trial court was clearly wrong in finding that Ms. Gordon acted reasonably under the circumstances.
 

 In the third assignment of error, Mr. Strickland argues the trial court erred by not awarding him damages. We disagree. “If the leased thing is lost or totally destroyed, without the fault of either party, or if it is expropriated, the lease terminates and neither party owes damages to the other.” La. Civ.Code art.
 
 *372
 
 2714. As previously mentioned, the extensive floodwater damaged the apartment, rendering it uninhabitable and unsuitable for rental purposes. Because Ms. Gordon was not at fault in destroying the leased premises, she owes no damages to Mr. Strickland.
 

 17Finally,' Ms. Gordon, in her appeal brief, requests this court to award her the costs associated with this appeal. We decline to do so. Each party is to bear their own costs. See La.Code Civ. Proc. 2165.
 

 Accordingly, for the above reasons, the judgment of the trial court is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . In addition to his individual claims, Mr. Strickland asserted a claim on behalf of his minor daughter, Meridith Strickland. Evan Strickland, Mr. Strickland’s major son, also was named as a plaintiff in the original petition. Meridith’s and Evan’s claims were dismissed prior to trial.
 

 [2]
 

 . La. C.C.P. art. 1672 B provides:
 

 In an action tried by the court without a jury, after the plaintiff has completed die presentation of his evidence, any parly, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.